UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| **GROVER GAMING, et al.,** | ) |
| | ) |
| **Plaintiffs,** | ) |
| | ) |
| vs. | ) Case No. 4:21-cv-1505 PLC |
| | ) |
| **ANIL PATEL d/b/a EZ QUICK MART,** | ) |
| | ) |
| **Defendant.** | ) |

## MEMORANDUM AND ORDER

The matter is before the Court on Plaintiffs Grover Gaming's (Grover Gaming) and Banilla Games, Inc.'s (Banilla) renewed motion for default judgment pursuant to Fed. R. Civ. Pro. 55(b) [ECF No. 23] against Defendant Anil Patel (Patel) doing business as EZ Quick Mart in this copyright and trademark infringement action. Plaintiffs seek statutory damages, a permanent injunction, costs, and attorney's fees against Defendant. [ECF No. 23] After Plaintiffs filed the joint renewed motion, they voluntarily dismissed some of their claims against Defendant.[1] [ECF No. 38]. Accordingly, Plaintiffs' motion is denied as to Banilla, and granted in part and denied in part as to Grover Gaming.

**I.    Background**

Grover Gaming creates, designs, develops, and manufactures coin-operated electronic games, including a line of electronic video games called Fusion. [ECF No. 1, ¶ 10] Grover Gaming independently created the entirety of the Fusion line, including the graphical interface, the artwork, static images, and audiovisual effects therein. [ECF No. 1, ¶ 17]  Grover Gaming distributes its Fusion games in stand-alone gaming cabinets sold through Banilla, its exclusive distributor. [ECF

---

[1] Plaintiffs filed a three-count complaint against Defendant, with Grover Gaming seeking relief under Counts I and II and Banilla seeking relief under Count III. Plaintiffs voluntarily dismissed Counts II and III of the complaint. Although Banilla has not been dismissed from the suit, it no longer has a claim against Defendant.

No. 1, ¶ 22] End-users purchase these cabinets and games from Banilla. [ECF No. 1, ¶ 22] This lawsuit specifically pertains to the Fusion 4 version of Grover Gaming's Fusion line. [ECF No. 1, ¶ 26]

Grover Gaming alleged in the complaint that it owns the copyright in the audiovisual work contained in Fusion 4 and has registered that work with the U.S. Copyright Officer as Registration Number PA-2-293-309. [ECF No. 1, ¶28]. It also owns a trademark of the name "FUSION". [ECF No. 1,  ¶ 30] Grover Gaming alleged it places certain information ("Confidential Identifying Information") into the Fusion games' software that is briefly displayed during the play of the game and which provides verification that the game console is an authorized Fusion game unit. [ECF No. 1, ¶24]

Grover Gaming alleged that on October 18, 2021, its investigator verified that Defendant was displaying and making available for play a pirated version of a Fusion 4 gaming machine at his business, the EZ Quick Mart. [ECF No. 1, ¶¶ 6, 32-39] Grover Gaming alleged that the Confidential Identifying Information was absent from the Fusion 4 gaming machine during play, confirming that the machine was pirated. [ECF No. 1, ¶¶ 36-39]

Plaintiffs filed a three-count complaint in December 2021. [ECF No. 1] Count I of the complaint is brought under the Copyright Act, 17 U.S.C. §101, *et seq.*, for Defendant's violation of Grover Gaming's copyright in Fusion 4's audiovisual effects through his public display and performance of these effects during the play of the pirated Fusion 4 game on his business's premises. Count II of the complaint asserts violations of the Lanham Act, 15 U.S.C. §1125, for Defendant's infringement of Grover Gaming's trademark of the "FUSION" mark though Defendant's use of the mark throughout the game play of the pirated Fusion 4 Game on his business's premises. In Count III, Banilla claims unfair competition under the Lanham Act, 15 U.S.C. § 1125(a). In the complaint, Plaintiffs request a preliminary and permanent injunction

enjoining Defendant from using the pirated Fusion 4 Game, statutory damages, and attorney's fees and costs.

Plaintiffs served a summons and copy of the complaint on Defendant on December 30, 2021. [ECF No. 7] Although Defendant's answer to the complaint was due on January 20, 2022, he did not timely file an answer. On February 22, 2022, Plaintiffs filed motions for entry of default by the Clerk and for entry of default judgment. [ECF Nos. 11 & 12] Simultaneously, Defendant filed motions to dismiss the complaint and for appointment of counsel. [ECF Nos. 14, 15] In the motion to dismiss, Defendant alleged he purchased the Fusion 4 gaming machine online from Alibaba.com in April and received delivery of the game in October. [ECF No 15]. Defendant alleged he did not know the game was "fake[,]" and that he initiated the return of the game to the seller, 3D Electronics, after receiving Plaintiffs' lawsuit. [ECF No. 15] Defendant alleged the seller picked up the game but did not issue him a refund. [ECF No. 15] Defendant requested the Court dismiss the case because he was a "victim" of the seller and believed Plaintiffs "need to go after" the seller of the game. [ECF No. 15] Defendant attached a document purporting to be a "pick[-]up receipt" suggesting "Guangzhou 3D Electronic Technology Co., Ltd." "picked up" a "Fusion 4 Gaming Box" from the EZ Quick Mart on January 8, 2022. [ECF No. 15]

On February 28, 2022, the Court denied Plaintiffs' motions for entry of clerk's default and for entry of default judgment finding Defendant's appearance by virtue of his motion to dismiss, while untimely, demonstrated a desire to contest the action. [ECF No. 17] Plaintiffs filed a memorandum in opposition to Defendant's motion to dismiss. [ECF No. 19] On March 9, 2022, the Court denied without prejudice Defendant's motions to dismiss and for appointment of counsel. [ECF No. 20] Defendant did not file an answer or other response to the complaint.

On March 31, 2022, Plaintiffs filed renewed motions for clerk's default and default judgment. [ECF Nos. 22 & 23] In the renewed motion for default judgment, Plaintiffs sought

3

$30,000 in statutory damages under the Copyright Act on Count I; (2) a permanent injunction enjoining Defendant from further use of Plaintiffs' intellectual property under the Copyright Act and the Lanham Act; and (3) costs and attorney's fees. [ECF Nos. 23 & 24] Defendant did not respond to Plaintiffs' motions.

On April 28, 2022, the Court conducted a hearing on Plaintiffs' renewed motions for entry of clerk's default and default judgment. [April 28, 2022 docket entry] At the hearing, Defendant appeared *pro se* and did not oppose Plaintiffs' motions. [April 28, 2022 docket entry] Defendant acknowledged his failure to timely file an answer to Plaintiffs' complaint and did not express a desire to do so. [ECF No. 29] On April 29, 2022, the Clerk entered default against Defendant. [ECF No. 30]

On July 20, 2022, the Court held a hearing on damages and attorney fees on Plaintiffs' renewed motion for default judgment. [July 20, 2022 docket entry] Plaintiffs appeared by counsel and Defendant did not appear.[2] Plaintiffs requested $30,000 in statutory damages under the Copyright Act on Count I, asserting Defendant's infringement was willful and that Defendant was a sophisticated businessman and litigant, with several registered business entities and pending lawsuits.[3]

Plaintiffs' counsel testified in support of Plaintiffs' damages request. Although Defendant

---

[2] Notice of the hearing, sent by the Clerk of the Court via mail to Defendant, was returned undeliverable. [ECF No. 32] Prior to the hearing, Plaintiffs' counsel filed a memorandum stating he emailed a copy of the hearing notice to Defendant and that Defendant responded to counsel's email. [ECF No. 33] At the July 20, 2022 hearing, Plaintiffs' counsel testified he sent Defendant an email on June 18, 2022, advising Defendant of the hearing setting with a copy of the hearing notice attached. (Tr. 17) Counsel testified he sent the notice to an email address provided by Defendant and which counsel used to communicate with Defendant throughout the pendency of the case. (Tr. 17) Defendant responded to the email message later that day. (Tr. 17)

[3] Plaintiffs' counsel testified he was able to identify a "handful" of business entities formed by Defendant, including "one that specifically references that its general business purpose is the use of gaming systems, identified as Apex Arcade LLC." (Tr. 22). Counsel also testified he identified "several different lawsuits involving either [Defendant] individually or [Defendant's] entities[.]" (Tr. 23). Upon questioning by the Court, counsel stated there was "a connection between [EZ Quick Mart's address] and some of the entities in their registrations" but that he did not have "the opportunity to specifically tie these [businesses and lawsuits] to Defendant" through "confirmation from Defendant[.]" (Tr. 24).

4

represented that he returned the pirated gaming console to the seller, counsel stated that Defendant never provided Plaintiffs with information regarding Defendant's purchase and return of the gaming console despite numerous requests to do so. (Tr. 28-29). Counsel asserted Defendant continued to import games from China after the lawsuit was initiated, testifying that an "import genius report" obtained by counsel showed "Anil Patel" received three imports of "amusement game[s]" from a Chinese shipper on April 27, 2022. (Tr. 22). During a June 30, 2022 visit to the EZ Quick Mart, counsel did not see the pirated Fusion 4 game but did see several other gaming machines in the store. (Tr. 19-20). Counsel did not know the amount Defendant paid for the pirated gaming console but testified that an authentic Fusion 4 gaming console retails for $9,590. (Tr. 26). Counsel also presented argument and testimony in support of Plaintiffs' attorney's fees request which will be discussed in greater detail later in the memorandum.

Following the hearing, Plaintiffs voluntarily dismissed without prejudice Counts II and III of their complaint, leaving only Grover Gaming's claim under the Copyright Act. [ECF No. 38] Counsel also filed a second supplemental declaration in support of Plaintiffs' request for attorney's fees. [ECF Nos. 39, 39-1]

**II.    Discussion**

In the renewed motion, Plaintiffs seek a default judgment awarding statutory damages in the amount of $30,000 and a permanent injunction to prevent Defendant's future act of infringement under the Copyright Act (Count I). [ECF No. 23] Plaintiffs also seek an award of attorney's fees and costs incurred in bringing this action. [ECF No. 23]

A.  <u>Default Judgment Standard</u>

After default has been entered, the defendant is deemed to have admitted all well-pleaded factual allegations in the complaint. <u>Taylor v. City of Ballwin, Mo.</u>, 859 F.2d 1330, 1333, n.7 (8th Cir. 1988). The Court must still "consider whether the unchallenged facts constitute a legitimate

5

cause of action, since a party in default does not admit mere conclusions of law." Murray v. Lene, 595 F.3d 868, 871 (8th Cir. 2010) (quoting 10A C. Wright, A. Miller & M. Kane, Federal Practice and Procedure § 2688 at 63 (3d ed.1998)). Furthermore, when the complaint asserts a claim for an indefinite or uncertain amount of damages, allegations relating to the amount of damages must be proven in a supplemental hearing or proceeding. Everyday Learning Corp. v. Larson, 242 F.3d 815, 818 (8th Cir. 2001); see also Stephenson v. El-Batrawi, 524 F.3d 907, 915–16 (8th Cir. 2008); Fed. R. Civ. P. 55(b)(2)(B) ("The court may conduct hearings or make referrals ... when, to enter or effectuate judgment, it needs to ... determine the amount of damages[.]")

B. Counts II and III – Plaintiffs' Lanham Act Claims

1. Liability

In Counts II and III of the complaint, Plaintiffs' sought recovery for Defendant's alleged violations of the Lanham Act, 15 U.S.C. §1125. [ECF No. 1] Grover Gaming alleged injuries stemming from Defendant's infringement of its trademark in the "FUSION" mark in Count II, while Banilla alleged Defendant's use and display of the pirated gaming console constituted unfair competition in Count III. [ECF No. 1, ¶¶ 53-63, 64-70] In the renewed motion for default judgment, Plaintiffs sought injunctive relief and an award of costs and attorney's fees related to these claims. [ECF Nos. 23 & 24]

Following the hearing on the renewed motion, however, Plaintiffs voluntarily dismissed Counts II and III without prejudice, leaving only Grover Gaming's claim under the Copyright Act. [ECF No. 38] Although Grover Gaming dismissed one of its claims and Banilla dismissed its only claim, Plaintiffs did not file an amended motion for default judgment and Banilla has not been dismissed from the case. As a result, Plaintiffs' renewed motion seeks relief on claims that are no longer before the Court. Because Plaintiffs ended their lawsuit on these claims, the Court denies

6

Plaintiffs' renewed motion for default judgment with respect to Grover Gaming on Count II and to Banilla on Count III.

      2.  Attorney's Fees

As for Plaintiffs' request for costs and attorney's fees associated with these claims, the Lanham Act provides for recovery of "the costs of the action" when a party establishes a violation of the Act and, "in exceptional cases[,]" permits the Court to "award reasonable attorney fees to the prevailing party." 15 U.S.C. 1117(a). Because Grover Gaming and Banilla dismissed their Lanham Act claims against Defendant, they have not demonstrated a violation of the Act and are not prevailing parties on these claims. Accordingly, Plaintiffs' requests for an award of costs and attorney's fees associated with these claims action are denied.[4]

    C.  Count I – Grover Gaming's Federal Copyright Claim

      1.  Liability

The Copyright Act grants copyright owners the exclusive rights to do and to authorize, among other things, the reproduction of "the copyrighted work"; the preparation of "derivative works based upon the copyrighted work"; the distribution of "copies….of the copyrighted work to the public by sale or other transfer of ownership, or by rental, lease, or lending"; the public performance of "audiovisual works", and the display of certain "copyrighted work publicly." 17 U.S.C. § 106; Ray v. ESPN, Inc., 783 F.3d 1140, 1144 (8th Cir. 2015). To prevail on a claim of copyright infringement, a plaintiff must establish (1) ownership of a valid copyright and (2) copying of the original elements of the copyrighted work. Infogroup, Inc. v. Database LLC, 956 F.3d 1063, 1066 (8th Cir. 2020).

Grover Gaming alleged in the complaint that it owns the copyright in the audiovisual work contained in Fusion 4 and registered that work with the U.S. Copyright Office. [ECF No. 1, ¶ 28]

---

[4] While Banilla's dismissal of its only claim forecloses its possibility of a cost and fee award, Grover Gaming also seeks an award under the Copyright Act.

Grover Gaming also alleged Defendant displayed a pirated or "hacked" version of the Fusion 4 game at his business, and that the game contained unauthorized public displays and performances of Grover Gaming's copyrighted audiovisual effects. [ECF No. 1, ¶¶ 44-45]. Taking the allegations in the complaint as true, Grover Gaming has satisfied the two requirements for a claim of copyright infringement, and is entitled to default judgment against Defendant on Count I.

### 2. Statutory Damages

Grover Gaming has elected to seek statutory damages under the Copyright Act.[5] [ECF No. 23] The Act provides for statutory damages of "not less than $750 or more than $30,000 as the court considers just" per copyright. 17 U.S.C. § 504(c)(1).  The Court can award statutory damages up to $150,000 per copyright for willful infringements. 17 U.S.C. § 504(c)(2). "The Copyright Act does not define 'willful,' however, federal courts have determined that willfulness may be based on actual or constructive knowledge of the infringement, or reckless disregard of a copyright holder's rights." Cards Against Humanity, LLC v. Skkye Enterprises, 4:16-CV-1534 AGF, 2017 WL 3671020, at *3 (E.D. Mo. Aug. 9, 2017). See also RCA/Ariola Intern., Inc. v. Thomas & Grayston Co., 845 F.2d 773, 779 (8th Cir. 1988) ("[I]n the context of copyright law, willfulness entails knowledge that an act constitutes an infringement, rather than mere purposeful performance of an action without knowledge of whether it is an infringement[.]") (citing  M. Nimmer and D. Nimmer, Nimmer on Copyright § 14.04[B][3] (1987)).

The Court has "wide discretion in determining the appropriate amount of statutory damages, based on three main factors: (1) 'the expenses saved and profits reaped by the defendants in connection with the infringements;' (2) 'the revenues lost by the plaintiffs as a result of the defendants' conduct;' and (3) 'the infringers' state of mind whether willful, knowing, or merely innocent.'" Cards Against Humanity, LLC, 2017 WL 3671020, at *3 (quoting W. Coast Prods., Inc.

---

[5] Under the Act, an infringer is liable for either the copyright owner's actual damages and additional profits of the infringer or statutory damages. 17 U.S.C. § 504(a).

v. Garrett, No. 4:12CV01551 AGF, 2014 WL 752670, at *2 (E.D. Mo. Feb. 25, 2014)). Damages should be "designed to discourage wrongful conduct" and should reflect "the strong public interest in [e]nsuring the integrity of the copyright laws." Id. (quoting Cass Cty. Music Co. v. C.H.L.R., Inc., 88 F.3d 635, 643 (8th Cir. 1996) (citation omitted) and Music City Music v. Alfa Foods, Ltd., 616 F. Supp. 1001, 1004 (E.D. Va. 1985)). "Courts generally agree that statutory damages should exceed unpaid licensing fees to emphasize that it costs less to obey the copyright laws than to violate them." Lorimar Music A. Corp. v. Black Iron Grill Co., No. 09-6067-CV-SJ-FJG, 2010 WL 3022962, at *2-3 (W.D. Mo. July 29, 2010).

In the renewed motion, Grover Gaming seeks $30,000 in statutory damages contending Defendant's violation of the Copyright Act was "willful" as evidenced by his "egregious conduct after service of process in this matter[.]" [ECF No. 24, page 12] Specifically, it argues that Defendant's "disposal" of the machine before contacting Plaintiffs' counsel to seek a resolution "could certainly imply nefarious intent or even destruction of evidence[.]" [ECF No. 24, page 12] Grover Gaming maintains that Defendant's refusal to provide it with information regarding Defendant's purchase and subsequent return of the pirated machine impeded Grover Gaming's ability to combat further infringement of its intellectual property. [ECF No. 24, page 13] Grover Gaming further contends that Defendant's "unauthorized disposal of the gaming machine" and his failure to defend himself in the lawsuit rendered it impossible to ascertain precisely how much Defendant profited from the pirated machine. [ECF No. 24, at 12]

While Defendant's lack of cooperation in providing Plaintiffs' information regarding his purchase and return of the machine cannot be construed as good faith, the Court is not convinced that Defendant's actions, including his immediate return of the machine following notice of the lawsuit, were "egregious" or "nefarious."[6] The same can be said of the evidence that Defendant

---

[6] Again, Plaintiffs attempted to paint Defendant as a shrewd, and potentially disreputable, businessman

appears to have received additional gaming consoles from China after initiation of the lawsuit and the presence of other gaming consoles at Defendant's business as of June 2022.  While Grover Gaming suggests that these facts demonstrate Defendant's lack of respect for copyright laws, there is no evidence before the Court demonstrating that these consoles are pirated or hacked games obtained in violation of anyone's copyright.

While it is not certain how long Defendant displayed the pirated game in his store, the evidence suggests it was a few months, likely between October 2021 and January 2022. Due to the procedural posture of the case, discovery was not conducted and there is no evidence establishing how much Defendant earned from the pirated game. The undisputed evidence, however, is that an authentic Fusion 4 gaming console retails for $9,590.  Based on the evidence of the expenses Defendant saved by purchasing a pirated game, Grover Gaming's approximate lost revenues, and Defendant's state of mind, the Court concludes that an award of $15,000 is reasonable for Defendant's infringement.

    3. <u>Injunctive Relief</u>

Grover Gaming is also requesting an injunction prohibiting Defendant's use of the pirated game.  Grover Gaming contends that, due to Defendant's lack of cooperation, it has been unable to confirm whether the pirated game was actually returned to the supplier. Grover Gaming argues it is entitled to an injunction because it will likely suffer irreparable harm without the injunction, and Defendant will not be harmed by an injunction requiring him to comply with the Copyright Act.

The Act permits the Court to grant a permanent injunction "on such terms as it may deem reasonable to prevent or restrain infringement of a copyright." 17 U.S.C. §502(a).  To obtain a permanent injunction, the plaintiff must demonstrate that: (1) it has suffered an irreparable injury;

---

through testimony that Defendant had multiple businesses and outstanding lawsuits. Counsel acknowledged at the hearing, however, that he had not definitively tied these businesses to Defendant. Even if there were a connection between Defendant and these other businesses and lawsuits, their mere existence does not necessarily suggest a willful copyright violation in this case.

(2) remedies available at law, such as monetary damages, are inadequate to compensate for that injury; (3) a remedy in equity is warranted, considering the balance of hardships between the plaintiff and defendant; and (4) the public interest would not be disserved by a permanent injunction. Cards Against Humanity, LLC, 2017 WL 3671020, at *6 (quoting eBay Inc. v. Merc Exchange, L.L.C., 547 U.S. 388, 391 (2006). "In copyright cases, irreparable harm is presumed on a showing of a reasonable likelihood of success on the merits[.]" Id.  With respect to the public interest, "it is virtually axiomatic that the public interest can only be served by upholding copyright protections and, correspondingly, preventing the misappropriation of the skills, creative energies, and resources which are invested in the protected work." Id. (quoting Apple Computer, Inc. v. Franklin Computer Corp., 714 F.2d 1240, 1255 (3rd Cir. 1983) (citation omitted)).

Due to Defendant's default, Grover Gaming has established a reasonable likelihood of success on the merits and, therefore, irreparable harm. Because Grover Gaming was unable to independently verify Defendant's return of the pirated gaming console, there is a risk of future infringement by Defendant and monetary damages alone are inadequate. See Olan Mills, Inc. v. Linn Photo Co., 23 F.3d 1345 (8th Cir. 1994) ("When a copyright owner has established a threat of continuing infringement, the owner is entitled to an injunction regardless of registration.") Furthermore, the hardship to Grover Gaming resulting from the infringement and the possibility of continued infringement outweighs any burden to Defendant from being enjoined from continuing his infringement. Finally, the public interest would be served by granting Grover Gaming a permanent injunction to prevent further misappropriation of its work. The Court has reviewed the permanent injunction proposed by Grover Gaming and believes it is appropriate; accordingly, it will be entered as set forth below.

    4.   Costs and Attorney's Fees

Grover Gaming seeks reimbursement under the Copyright Act of $2,357.00 in "costs and expenses" and $51,760.50 in attorney's fees it incurred in connection with the suit. [ECF Nos. 23, 39-1].

Under the Act, the Court "in its discretion may allow the recovery of full costs by or against any party" and may "award a reasonable attorney's fee to the prevailing party as part of the costs." 17 U.S.C. § 505. Typically, a party may recover only those "costs" codified in the general "costs" statutes, 28 U.S.C. §§ 1821, 1920. Rimini Street, Inc. v. Oracle USA, Inc., 139 S. Ct. 873, 877-78 (2019). In addition to reimbursement for witnesses' "[p]er diem and mileage" expenses under 28 U.S.C § 1821, a court may tax as costs the following:

> (1) Fees of the clerk and marshal;
> (2) Fees for printed or electronically recorded transcripts necessarily obtained for use in the case;
> (3) Fees and disbursements for printing and witnesses;
> (4) Fees for exemplification and the costs of making copies of any materials where the copies are necessarily obtained for use in the case;
> (5) Docket fees under section 1923 of this title;
> (6) Compensation of court appointed experts, compensation of interpreters, and salaries, fees, expenses, and costs of special interpretation services under section 1828 of this title.

28 U.S.C. § 1920.

Grover Gaming requests reimbursement of $2,357 for its "total out of pocket costs and expenses" incurred during the course of the litigation, including filing fees ($402), investigation expenses ($1,595), legal research expenses ($110), and special process server fees ($250). Of these expenses, the only cost recoverable under Sections 1821 and 1920 is $402 for the Clerk's filing fee.[7] The $110 legal research expenses, while not recoverable as a cost under Sections 1821 and 1920, are "reasonable out-of-pocket expenses of the kind normally charged to clients by attorneys" and can be included as part of the reasonable attorney's fees awarded, as discussed in further detail

---

[7] While fees of the marshal are recoverable, fees paid to a special process server are not. Crues v. KFC Corp., 768 F.2d 230, 234 (8th Cir. 1985).

12

below. See Pinkham v. Camex, Inc., 84 F.3d 292, 294-95 (8th Cir. 1996). Because many of the expenses sought by Grover Gaming are not recoverable under the relevant statutes, the Court grants Grover Gaming's request for reimbursement of the $402 filing fee and $110 in legal research expenses, and denies its request for recovery of the remaining "out of pocket costs and expenses."

The sole exception to the statutory limitations on costs is attorney's fees, which the Copyright Act expressly authorizes a court to award as "costs." 17 U.S.C. § 505. Section 505 grants courts "broad leeway" in awarding attorney's fees. Kirtsaeng v. John Wiley & Sons, Inc., 579 U.S. 197, 202 (2016). The courts may not "'award[ ] attorney's fees as a matter of course'; rather, a court must make a more particularized, case-by-case assessment." Id. (quoting Fogerty v. Fantasy, Inc., 510 U.S. 517, 533(1994)). In deciding whether to make an award, the Court considers the objective reasonableness of a party's litigation position, "frivolousness, motivation,… compensation[,] and deterrence." Designworks Homes, Inc. v. Thomson Sailors Homes, L.L.C., 9 F.4th 961, 964 (8th Cir. 2021) (quotations omitted).

The Act requires that any fee award be granted to a prevailing party and that the amount be reasonable. 17 U.S.C. § 505. Reasonable fees under the Act are determined using the "lodestar," which is calculated by multiplying a reasonable hourly rate by the number of hours reasonably expended in the litigation. Pinkham, 84 F.3d at 294; Hensley v. Eckerhart, 461 U.S. 424, 433 (1983). The lodestar "provides an objective basis on which to make an initial estimate of the value of a lawyer's services." Hensley, 461 U.S. at 433. "The party seeking an award of fees should submit evidence supporting the hours worked and rates claimed." Id; see also Pinkham, 84 F.3d at 293-94 (in the plaintiff's motion for attorney's fees, counsel attested to their trial experience, range of individual billing rates, total number of hours at each rate, and the novelty and number of issues involved). The court may reduce the award where the documentation of hours is inadequate. Id.

13

In the renewed motion for default judgment, Grover Gaming sought reimbursement for $45,688 in attorney's fees based on "hourly rates rang[ing] from $350.00 per hour to $525.00 per hour and the hours billed are 64.2."[8] [ECF No. 23, 24-6] Plaintiffs' counsel's supplemental declaration in support of the request did not provide any details on the total number of hours at each rate or how many hours were spent on specific tasks.[9]

At the July 20, 2022 hearing, the Court informed counsel that the record was "deficient, particularly in the area of the attorneys' fees" and that the affidavit filed in support was "vague and lacking in detail."[10] (Tr.  4)  The Court advised counsel that, in support of a fee request, an attorney typically provides the Court with a "summary document" which "breaks down…the amount of time that was spent on any given…event and the amount of money that they're charging for it." (Tr.  4) Counsel agreed to file "something…that would have breakdowns of the… nature of the work and the amount of fees for the different stages of the work[.]" (Tr.  5-6)

During the hearing, Plaintiffs' counsel testified that he is a partner at the law firm of Spencer Fane and has been licensed to practice law for 27 years. (Tr.  29)  Counsel was primarily responsible for handling the day-to-day activities of the case, including the filing of the complaint and all interactions with Defendant. (Tr.  29-30)  Counsel met with Defendant twice during the pendency of the case, each meeting lasting between 30 and 60 minutes. (Tr.  30-31)  Due to Defendant's unrepresented status, counsel took additional steps to ensure Defendant received copies of the filings and was aware of all relevant dates and deadlines. (Tr.  31)

---

[8] These figures were subsequently amended.

[9] The supplemental declaration provides only a general description of the work performed, stating that 64.2 hours were collectively spent on tasks such as communicating with Defendant and preparing the documents filed in the case.

[10] The Court also noted there were some discrepancies in Plaintiffs' filings regarding the hours worked and the amount of attorney's fees incurred. Specifically, it appeared that the number of hours billed as represented in the renewed motion and the supplemental declaration filed by counsel were incorrect because the average hourly rate exceeded the range set forth and the information conflicted with that contained in the first motion for default judgment. [ECF No.  12, 13-6]

Counsel stated the case was not a typical default situation where minimal work was performed and that the firm invested significant resources to the case. (Tr. 37-38) This included spending "a lot of [energy] really trying to determine where [Defendant] got this game so that we could put a stop to it and stop other people from doing this as well as stop [Defendant.]" (Tr. 38) Furthermore, because the case involved complicated intellectual property, counsel conferred with one of the firm's intellectual property partners. (Tr. 38) Counsel acknowledged Grover Gaming was requesting "a lot" of attorney's fees but testified the amounts charged were fair and reasonable given the work performed and the nature of the services rendered. (Tr. 38-39) Following counsel's testimony, the Court reminded counsel to submit a filing setting forth a summary of the nature of the work performed and specifically requested information connecting the hours billed with the rates charged. (Tr. 39)

Following the hearing, counsel filed a second supplemental declaration regarding the attorney's fees charged. [ECF No. 39-1] In the declaration, counsel set out the total number of hours billed over a one- to two-month period, the total amount of fees incurred over that period, and a description of the general category of services performed.[11] Counsel averred that the total hours billed by Spencer Fane for the period from October 5, 2021, through May 31, 2022 was

---

[11] For example, the declaration summarizes the firm's billing for the months of October and November 2021 as follows:

> For the period from October 5, 2021 through November 30, 2021, Spencer Fane attorneys spent 49.3 hours performing various tasks, including: (1) coordinating with the clients; (2) investigating Defendant and his alleged misconduct; and (3) drafting the Complaint and supporting declarations. The total fees incurred by Plaintiffs for the period from October 5, 2021 through November 30, 2021 is $21,401.00. [ECF No. 39-1, ¶ 10]

Notably, counsel's testimony at the hearing was similarly vague. Counsel testified:

> [F]rom October 5, 2021, to November 30, 2021, there were 49.3 hours billed by attorney Glenn Robbins, Jason Smith, and Jessica Hill….Through January 31, there were an additional 14.9 hours billed,…from February 1 through February 28, there's an additional 30 hours billed to the matter. From March 2 through March 31, I don't have the exact number of hours for that period…For the month of April, there were 4.4 hours billed for the matter. And for the month of May, there was 2.9 hours to the matter. So we can supplement with a declaration as to the exact number of hours for that period. (Tr. 36-37).

15

115.7, with hourly rates ranging from $350 to $525 per hour, and that the total charges for attorney's fees was $51,760.50. [ECF No. 39-1, ¶¶ 6,8] Counsel's second supplemental declaration does not set forth the amount of time spent on each task or the hourly rate charged.

As already noted, the Court advised counsel at the hearing that Plaintiffs' filings regarding attorney's fees were too vague and directed counsel to file a detailed summary setting forth how the attorneys' hours were spent and the rates being charged for that time. Unfortunately, neither counsel's testimony nor the second supplemental declaration submitted in support of the fee request provided this information. As set forth more clearly below, this lack of detail significantly hinders the Court's ability to provide a meaningful review of Grover Gaming's request for attorney's fees.

In calculating the lodestar, a reasonable hourly rate "is usually the ordinary rate for similar work in the community where the case has been litigated." Fish v. St. Cloud State University, 295 F.3d 849, 851 (8th Cir. 2002). The hourly rates charged in this case ranged from $350 to $525 per hour. Aside from counsel's testimony as to his own experience and position, the Court has no information on the experience of any other attorney that worked on the case. Grover Gaming has not provided the Court with any information on the rate charged by any specific attorney, including lead counsel, or what the ordinary rate is for similar work in the community. Furthermore, the declarations submitted do not delineate which hours were billed at which rate. Because Grover Gaming has the burden of establishing its entitlement to the requested fees and because it is not clear which rate a particular service was billed at or why, the Court uses the lowest rate provided, $350 per hour, for the majority of hours billed. See Texas Life Ins. Co. v. Packman, No. 4:13-CV-2019, 2014 WL 1400182, at * 2 (E.D. Mo. Apr. 10, 2014) (finding billable hourly rates of $350 and $400 for partners not unusual for the St. Louis area). To the limited extent that the Court has been able to conclusively attribute time to lead counsel, the Court will use the highest rate provided, $525 per hour.

16

The Court is required to exclude hours that are not "reasonably expended," that is, hours that are excessive, redundant, or unnecessary. Hensley, 461 U.S. at 434. Furthermore, the Court may adjust a fee upward or downward based on other factors, including (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal services properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) the nature of the fee (fixed or contingent); (7) the time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorney; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) the size of awards in similar cases. See Hensley, 461 U.S. at 434, n.9 citing Johnson v. Georgia Highway Express, Inc., 488 F.2d 714, 717–719 (5th Cir. 1974).

Again, Grover Gaming's failure to provide the Court with specific information regarding how these 115.7 hours were spent impairs the Court's ability to determine how many hours were reasonably expended in this matter. The Court finds that Grover Gaming's failure to provide this essential information warrants a substantial reduction of the number of hours claimed.

The Court finds 58 hours to be reasonable in bringing and prosecuting the action. While the complex subject matter and the difficulties created where an opposing party is *pro se* likely increased litigation expenses for Grover Gaming, this is also a case of a largely uncontested default judgment.  Furthermore, counsel's testimony at the hearing was that Spencer Fane spent considerable time not just litigating this case but attempting to extract information from Defendant for purposes of preventing future infringements by other parties. Of these 58 hours, the record demonstrates that 5 hours can be definitively attributed to lead counsel. This amount accounts for the time lead counsel spent meeting with Defendant and for a reasonable amount of time spent

preparing for and attending the April and July 2022 hearings.[12] In sum, having reviewed the submitted documentation, the Court finds Grover Gaming shall be permitted to recover attorney's fees in the amount of $21,175.[13] See Pfanenstiel Architects, Inc. v. Chouteau Petroleum Co., 978 F.2d 430, 431 (8th Cir. 1992) (noting the district court awarded $7,935.45 in attorney's fees under the Copyright Act in a default judgment); West Coast Productions, Inc. v. Garrett, No. 4:12-CV-2014, 2014 WL 752670, at *5 (E.D. Mo. February 25, 2014) (awarding attorney's fees in the amount of $480.00 under the Copyright Act in a default judgment); Broadcast Music, Inc. v. Cape Girardeau Brewing Co., LLC, No. 1:10-CV-189, 2011 WL 4625351, at *3 (E.D. Mo. October 4, 2011) (awarding $2,336 under the Copyright Act for 10 hours of work in a default judgment).

### III.    Conclusion

Accordingly,

**IT IS HEREBY ORDERED** that Plaintiffs' renewed motion for default judgment [ECF No. 23] is **GRANTED in part and DENIED in part** with respect to Count I, and **DENIED** with respect to Counts II and III.

**IT IS FURTHER ORDERED** that judgment in entered in favor of Plaintiff Grover Gaming and against Defendant Anil Patel in the amount of $15,000 in statutory damages; $21,175 in attorney's fees; and $512 in costs; for a total of $36,687.

**IT IS FURTHER ORDERED** that a permanent injunction is entered in this case, as follows:

> Anil Patel and his agents, employees, representatives, partners and joint venturers, as well as anyone acting on behalf of or in concert with them, are hereby permanently enjoined from displaying, using, copying, promoting, advertising, or commercially exploiting in any manner, either directly or indirectly, the counterfeit products or works which incorporated Grover Gaming's registered copyright at issue in this case.

---

[12] The April 28, 2022 hearing lasted 43 minutes and the July 20, 2022 hearing lasted 67 minutes.
[13] 53 hours at the rate of $350 (or $18,550) plus 5 hours at the rate of $525 (or $2,625) equals $21,175.

A separate judgment in accordance with this Memorandum and Order will be entered this same date.

                                                     /s/ Patricia L. Cohen
                                                   PATRICIA L. COHEN
                                                   UNITED STATES MAGISTRATE JUDGE

Dated this 7th day of October, 2022